UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMARIEAY PRESCOTT,<br><br>    Plaintiff,<br><br>v.<br><br>CONTRA COSTA COUNTY, et al.,<br><br>    Defendants. | Case No. 24-cv-01660-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

Pending before the Court is the second motion to dismiss filed by Defendants Contra Costa County and Contra Costa County Sherriff's Office. Dkt. No. 32. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

### I. BACKGROUND

Plaintiff Emarieay Prescott first filed this case against Defendants and various unidentified individual deputies in March 2024.[1] *See* Dkt. No. 1. Defendants moved to dismiss the case, arguing that Plaintiff's claims were barred by the statute of limitations and were not adequately pled. Dkt. No. 14. The Court found that Plaintiff's claims were not time-barred, but agreed that he had not pled enough facts to state a *Monell* claim against Defendants. Dkt. No. 20. Plaintiff filed an amended complaint. Dkt. No. 30 ("FAC").

According to the FAC, on March 18, 2020, Plaintiff was attacked by other inmates in his cell while awaiting trial in Contra Costa County's West County Detention Facility. *See id.* at ¶¶ 6–8. Plaintiff alleges that a deputy observed the incident but failed to intervene. *Id.* at ¶¶ 7, 16.

---

[1] To date, only the County and the Sheriff's Office have been served and appeared in this case. The Court refers only to these two entities as "Defendants" in the order.

1  Plaintiff was taken to the emergency room at a local hospital, diagnosed with an orbital fracture of
2  his right eye, and given pain medication. *Id.* at ¶¶ 10, 17. After the attack Plaintiff was placed in
3  protective custody. *See id.* at ¶ 9. However, Plaintiff contends that immediately after the incident
4  he had difficulty seeing out of his right eye and he submitted multiple grievance slips to have his
5  eye reexamined. *Id.* at ¶¶ 11, 12. Plaintiff contends that these grievance slips were ignored for
6  several months, and when he finally received follow-up care he was told his right eye was
7  permanently damaged. *Id.* at ¶¶ 13, 19. Medical staff said that they could have saved Plaintiff's
8  eyesight if he had been treated sooner. *See id.* at ¶¶ 13, 20. Based on these facts Plaintiff asserts
9  causes of action under 42 U.S.C. § 1983 for failure to protect him from the attack and deliberate
10  indifference to his medical needs in violation of the Fourteenth Amendment. *See id.* at ¶¶ 26–38.
11  Plaintiff further alleges that Defendants did not adequately train their employees, and had a
12  custom, policy, or practice of allowing deputies to ignore inmate grievances and not provide
13  medical aid to pretrial detainees. *See id.* at ¶¶ 39–44. Defendants move to dismiss the FAC. Dkt.
14  No. 32.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,

1    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
2    fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
3    2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).
4    "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the
5    applicable statute of limitations only when 'the running of the statute is apparent on the face of the
6    complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.
7    2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A]
8    complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of
9    facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*,
10   68 F.3d 1204, 1206 (9th Cir. 1995)).

**III.    DISCUSSION**

Defendants again argue that Plaintiff's *Monell* claims are not adequately pled. *See* Dkt. No. 32 at 4–7. They further urge that the Court should either set a deadline for Plaintiff to serve the unidentified Doe officers or they should be dismissed without prejudice. *Id.* at 7–8. The Court agrees.

**A.    *Monell* Claims**

Pursuant to *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658 (1978), "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, to plausibly state a claim for municipal liability under *Monell*, a plaintiff must allege unconstitutional conduct attributable to "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). In other words, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (quotation omitted). At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *See AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quotation omitted).

### i.  Contra Costa Sherriff's Office

As an initial matter, Plaintiff does not point to any allegations supporting a *Monell* claim against the Contra Costa County Sherriff's Office. In his opposition, Plaintiff appears to acknowledge that the FAC only "allege[s] *Monell* violations against *Contra Costa County*." *See* Dkt. No. 34 at 1 (emphasis added). The Court therefore **GRANTS** the motion to dismiss as to the Sherriff's Office.

### ii.  Custom, Policy, and Practice

Plaintiff contends that he has adequately alleged that the County had "customs and policies" in place such that its deputies did not protect inmates from violence from other inmates, ignored inmate grievances, and did not provide medical aid or assistance to pretrial detainees. *See* Dkt. No. 34 at 5–6; *see also* FAC at ¶¶ 22–24. Plaintiff appears to acknowledge that he does not have information about the nature of any specific policy, custom, or practice. *See* Dkt. No. 34 at 4–6. Rather, he suggests that such detail "will be revealed and sought out during the matter's discovery phase." *Id.* at 4. For now he alleges "upon information and belief" that the County:

- "[D]id not have protocols and policies in place for dealing with inmate on inmate violence regarding its pre-trial detainees" or for "providing medical aid or assistance to its pre-trial detainees." *See* FAC at ¶ 22.
- "[H]ad a further custom, policy, and/or practice allowing its deputies not to protect pre-trial detainees from inmate on inmate violence" and "to ignore inmate grievances to not provide medical aid or assistance to its pre-trial detainees." *Id.* at ¶ 23.
- "[D]id not have rules to prevent or minimize the risk of inmate on inmate violence" and "did not have rules to prevent or minimize the risk of inmates being denied adequate medical aid or assistance." *Id.* at ¶ 24.

Plaintiff offers no facts to support these conclusions aside from the "the rest of the complaint," which "systematically detail[s] how the attack took place . . . ." Dkt. No. 34 at 6. As

4

1 Plaintiff's own authority makes clear, however, allegations about a single incident are insufficient

2 to support *Monell* liability based on a longstanding practice or custom. *See Trevino v. Gates*, 99

3 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or

4 sporadic incidents; it must be founded upon practices of sufficient duration, frequency[,] and

5 consistency that the conduct has become a traditional method of carrying out policy."). As the

6 Ninth Circuit has explained, "[t]he custom must be so 'persistent and widespread' that it

7 constitutes a 'permanent and well settled [municipal] policy." *Id.* (quoting *Monell*, 436 U.S. at

8 691). But the FAC contains no support for the conclusion that what happened to Plaintiff was

9 anything more than an isolated incident.

10 Unlike a claim based on a practice or custom, a single incident may support a *Monell* claim

11 based on an unconstitutional municipal policy. *See Bagley v. City of Sunnyvale*, No. 16-CV-

12 02250-LHK, 2017 WL 344998, at \*14 (N.D. Cal. Jan. 24, 2017) (quoting *City of Okla. City v.*

13 *Tuttle*, 471 U.S. 808, 823–24 (1985)). And such a policy may be a policy of inaction. *See*

14 *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). However, the complaint must provide

15 sufficient factual allegations to plausibly support the inference that the incident "'was caused by

16 an existing, unconstitutional municipal policy, which policy can be attributed to a municipal

17 policymaker.'" *See Bagley* , 2017 WL 344998, at \*14 (quoting *Tuttle*, 471 U.S. at 823–24). "A

18 'policy' is a deliberate choice to follow a course of action . . . made from among various

19 alternatives by the official or officials responsible for establishing final policy with respect to the

20 subject matter in question." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)

21 (quotation omitted) (alteration in original). Courts have found that generic allegations about the

22 existence of such policies are insufficient. *See Garcia v. Cnty. of Napa*, No. 21-CV-03519-HSG,

23 2022 WL 110650, at \*6 (N.D. Cal. Jan. 12, 2022) (collecting cases).

24 Here, Plaintiff alleges that deputies failed to intervene to protect him from inmate violence

25 and failed to provide him sufficient medical care. He further alleges that the County had policies

26 in place allowing such conduct, or that any existing policies were insufficient to prevent it from

27 happening. *See* FAC at ¶¶ 22–24. But Plaintiff offers no detail about the nature of the alleged

28 policies or why he believes the deputies were acting (or failing to act) pursuant to such policies.

United States District Court
Northern District of California

Put another way, Plaintiff simply asserts that the County had policies in place that permitted the kind of harm he experienced. But the Ninth Circuit has expressly held that a plaintiff cannot plead a plausible *Monell* claim based on generic allegations that a defendant "maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs that [the plaintiff] elsewhere alleged." *AE*, 666 F.3d at 635, 637. Without more, Plaintiff's allegations against the County collapse into a *respondeat superior* theory of liability.

Plaintiff relies heavily on the Ninth Circuit's opinion in *Jackson v. Barnes*, suggesting that little detail is required to allege a policy of inaction. *See* Dkt. No. 34 at 4–5 (citing *Jackson*, 749 F.3d at 763–65). Plaintiff overreads this case. *First*, the plaintiff in *Jackson* was pro se, and the Ninth Circuit thus liberally construed his complaint. *See Jackson*, 749 F.3d at 763. *Second*, the plaintiff in *Jackson* provided factual allegations missing here. In *Jackson*, the Ventura County Sherriff's Department had conducted a videotaped interview of the plaintiff while he was in police custody without first giving him his *Miranda* warnings. *Id.* at 758–59. During the interview, the plaintiff admitted to being at the scene of the murder under investigation. *Id.* The plaintiff brought a *Monell* claim against the Sherriff's Department, alleging that it had failed to sufficiently supervise the sergeant who had interviewed him. *Id.* at 759, 762–63. The plaintiff alleged that the sergeant routinely failed to read *Miranda* warnings and that the Sherriff's Department knew, or should have known, of this unconstitutional conduct. *Id.* at 763. He further alleged that the Sherriff's Department deprived suspects of their *Miranda* warnings specifically "as a 'ploy' to elicit confessions." *Id.* at 764.

Plaintiff, despite being represented by counsel, offers no such allegations regarding the policies and motivation here. As he notes in his opposition brief, he is "unable to recite any 'official policy'" and so only pleads "the actions of the deputies . . . ." Dkt. No. 34 at 5. Plaintiff appears to concede that he does not know if there is any relevant policy, but suspects there might be. This is clearly insufficient. And even the broad suggestion that the County deprived pretrial detainees of medical care or assistance, FAC at ¶¶ 23–24, is belied at least in part by Plaintiff's own experience as described in the complaint. He alleges that following the attack he was taken to the emergency room and given medication. *Id.* at ¶¶ 10, 17. Even as alleged, any purported

6

1  policies appear to have fallen short only in his follow-up care.  Neither the Court nor Defendants
2  should have to speculate about the nature of Plaintiff's claims.  Plaintiff again has failed to
3  sufficiently allege *Monell* liability based on a custom, policy, or practice, and the Court **GRANTS**
4  the motion to dismiss on this basis.

### iii. Failure to Train

Plaintiff also contends that he has sufficiently alleged that the County did not adequately train its deputies regarding how to prevent or minimize the risk of inmate-on-inmate violence and how to prevent or minimize the risk that inmates are denied adequate medical aid or assistance. *See* Dkt. No. 34 at 6–7; *see also* FAC at ¶¶ 25, 42–44.  A municipality may be held liable under § 1983 for the inadequacy of law-enforcement training, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  To state such a claim, a plaintiff must show (1) "the existing training program" is inadequate "in relation to the tasks the particular officers must perform"; (2) the officials have been deliberately indifferent "to the rights of persons with whom the police come into contact"; and (3) the inadequacy of the training "actually caused the deprivation of the alleged constitutional right." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (quotation omitted).

Here, Plaintiff does not point to any specific allegations to support his failure-to-train theory.  *See* Dkt. No. 34 at 6–7.  The FAC again just asserts that the County did not adequately train its deputies.  *See* FAC at ¶ 25.  It provides no allegations about the training that the deputies actually received, what training they should have received, or how the lack of proper training caused the alleged violations of Plaintiff's constitutional rights.  The Court therefore **GRANTS** the motion as to the failure to train theory as well.

\*   \*   \*

Despite Plaintiff's suggestion, Defendants are not demanding that he "prove his claims" on a motion to dismiss.  *See* Dkt. No. 34 at 3.  Rather, under controlling law, he must allege sufficient facts to make his claims plausible and not simply possible.  He has not done so, and the Court accordingly **GRANTS** the motion to dismiss as to the *Monell* claims.  Despite having several

1  opportunities to do so, Plaintiff has failed to state a viable claim against Defendants.  In his
2  opposition, Plaintiff does not offer any additional allegations that he could include if given another
3  opportunity to amend, and instead suggests that he is waiting for discovery to determine the nature
4  of his case.  This is improper, and the Court thus concludes that providing Plaintiff yet another
5  opportunity to amend would be futile.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981,
6  1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("[W]here the plaintiff has previously been
7  granted leave to amend and has subsequently failed to add the requisite particularity to its claims,
8  the district court's discretion to deny leave to amend is particularly broad.") (quotation omitted).

### B. Doe Defendants

Defendants urge that the unidentified and unserved Doe Defendants should be dismissed as well.  *See* Dkt. No. 32 at 7–8.  Under Federal Rule of Civil Procedure 4(m), a plaintiff must serve each defendant with a summons and complaint within ninety days of filing the complaint.  *See* Fed. R. Civ. P. 4(m).  If a plaintiff fails to do so, the Court, on its own after notice to the plaintiff, "must dismiss the action without prejudice," or order that service be made within a specified time.  *Id.*  Nearly a year after the case was filed, however, Plaintiff has yet to identify and serve these parties.  Plaintiff appears to acknowledge that he does not know their identities.  *See* Dkt. No. 34 at 7.  And it is not clear what, if any steps, he has taken to uncover them.  In opposition to the motion to dismiss, Plaintiff suggests that Defendants should have to identify them for him.  *See id.*  Plaintiff cites no authority for this request.  Plaintiff may not, however, keep this case open indefinitely.  For the case to proceed, he must identify and serve the Doe Defendants or they will be dismissed without prejudice.

### IV. CONCLUSION

The Court **GRANTS** the motion to dismiss.  Dkt. No. 32.  The Court recognizes that the parties have asked the Court to stay this litigation because Plaintiff's counsel is receiving medical treatment.  *See* Dkt. No. 37.  The parties' stipulation did not include any reason why the Court should delay ruling on the pending motion to dismiss, and the Court finds that the parties—and this litigation generally—are best served by having the Court's ruling now.  However, the Court recognizes that given counsel's condition, Plaintiff may be unable to meet his appeal deadline if

judgment were entered today as to Defendants Contra Costa County and Contra Costa County Sherriff's Office.

Given these unusual circumstances, the Court will **GRANT** the stipulation to stay the case. Dkt. No. 37. The Court **STAYS** the remaining proceedings, including the entry of judgment and Plaintiff's obligation to serve the remaining Doe Defendants, through March 14, 2025, to accommodate counsel's convalescence. The parties are directed to file a status report by March 11, 2025, discussing (1) why judgment should not be entered as to Defendants Contra Costa County and Contra Costa County Sherriff's Office; (2) whether Plaintiff has served the remaining Doe Defendants, and if they have not yet been served; (3) why they should not be dismissed without prejudice. The Court cautions that to the extent counsel is still recovering, the Court is unlikely to grant a further stay and co-counsel may need to take over the lead (or Plaintiff may need to obtain new counsel) if he intends to pursue this case further. The Clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated:   12/12/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge